**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| OPEN COMMUNITIES, an Illinois Not-For-Profit Corporation AND ELIZABETH RICHARDSON, | Case No. 23 CV 14070 |
| Plaintiffs, | |
| v. | |
| HARBOR GROUP MANAGEMENT CO., LLC, HARBOR GROUP INTERNATIONAL, LLC, AZURE PARTNERS, LLC, PERQ HOLDINGS, LLC, PERQ SOFTWARE, LLC, PERQ MARKETING, LLC, AZURE NORTHGATE LLC AND SILVER NORTHGATE LLC, | Jury Trial Demanded |
| Defendants. | |

## COMPLAINT

Plaintiffs, Open Communities and Elizabeth Richardson, bring this action seeking damages and injunctive relief against a multifamily apartment complex management company and related apartment complex owners, and a software company that provides rental application tools using artificial intelligence ("AI"), named as Defendants herein: Harbor Group Management Co, LLC, Harbor Group International, LLC, Azure Partners, LLC, Perq Software, LLC, PERQ HOLDINGS, LLC,  PERQ Marketing, LLC, (Collectively, "PERQ"), Azure Northgate LLC and Silver Northgate LLC.

## NATURE OF ACTION

1.      Open Communities and Elizabeth Richardson ("Richardson") allege that Defendants intentionally utilized Artificial Intelligence to reject Richardson and Internet-based applicants having recourse to Housing Choice Vouchers, who are predominantly African

1

American.  Specifically, Defendants used AI to profile and refuse to rent an apartment at Northgate Crossing Apartments in Wheeling, Illinois to Richardson, who is African American and has a voucher, based on her race.  Open Communities, through its housing counseling, investigation and advocacy programs, was contacted by Ms. Richardson concerning Defendants' conduct, and confirmed through a six-month investigation that, at Northgate Crossing and at over 100 additional multifamily apartment complexes throughout the United States, Defendants intentionally employed PERQ Artificial Intelligence automated systems to communicate a blanket "no Housing Choice Voucher/No Section 8 Policy" policy to reject Internet rental applications from individuals like Richardson, who receive housing assistance payments.

2.      This action is brought pursuant to the Fair Housing Act of 1968, as amended, 42 U.S.C. §3601 et. seq.

3.      In response to Richardson's complaint of discrimination by Harbor Group Management Co, LLC at Northgate Crossing in Wheeling, Illinois, Open Communities undertook a fair housing investigation of rental application procedures at multifamily apartment properties managed by Harbor Group Management Co., LLC ("HGMC") utilizing PERQ automated "leasing assistants."  Open Communities verified blanket rejection by HGMC utilizing PERQ automated and conversational AI leasing agent systems of applicants receiving housing assistance payments, including at (a) HGMC-managed Northgate Crossing (which rejected Richardson), and (b) other tested HGMC-managed apartment complexes owned or controlled by  Harbor Group International, LLC and/or Azure Partners, LLC, identified in Appendix A.

4.      Demographic data relating to Northgate Crossing and Illinois, and in regions where the investigated apartment complex locations in which HGMC applied the blanket ban

through PERQ conversational Artificial Intelligence, reflects overrepresentation of African American renters receiving housing choice vouchers/ Section 8 assistance in those geographic locations.

5.      Defendants' conduct and tactics constitute unlawful intentional discrimination based on race and have an unlawful disparate impact on African American renters, all in violation of the Fair Housing Act.

6.      Defendants' conduct also violates Illinois law prohibiting Source Of Income discrimination in rental housing.  775 ILCS §5/1-103(0-5).

## JURISDICTION AND VENUE

7.      This Court has jurisdiction over the subject matter of this case pursuant to 42 U.S.C. §3613, 28 U.S.C. §§1331 and 1343, and as to Count III  under 28 U.S.C. §1367(a).

8.      Venue is proper in the Northern District of Illinois, Eastern Division, pursuant to 28 U.S.C. §1391 because Plaintiffs reside within the District and Eastern Division, Defendants are doing business within the District and Eastern Division, and events or omissions giving rise to the claims occurred in the District.

## PARTIES

9.      Open Communities is a private, non-profit corporation incorporated under the laws of Illinois with its principal place of business located at 1740 Ridge Avenue, Unit 117, Evanston, IL 60201.

10.      Open Communities is a HUD-designated fair housing enforcement organization, available for community members who experience discrimination, in response to which Open Communities conducts its own systemic investigations into impermissible advertisements, rental processes and service provider patterns of discrimination.

3

11.     Open Communities offers Housing Counseling Services in Northern Illinois, employing three certified HUD counseling staff.  Open Communities' housing counseling programs include individual counseling and education, renter assistance, homebuyer programs, and foreclosure mitigation counseling.

12.     Open Communities' mission includes advocating for the housing rights of communities of color, engaging in housing counseling, outreach and education, advocacy, fair housing investigations based on race discrimination, source of income and other protected classes, and enforcement of legal protections in housing, and other activities relating to promoting civil rights and encouraging integration in housing in the North and Northwest suburbs of Chicago.

13.     Plaintiff Elizabeth Richardson is a citizen of the United States residing in Schaumburg, Illinois who participates in the Housing Choice Voucher program administered by the United States Department of Housing and Urban Development through the Cook County Housing Authority.  Ms. Richardson's race is African American.

14.     Defendant Harbor Group Management Co, LLC ("HGMC") is a Division of Harbor Group International, LLC, headquartered  at 999 Waterside Drive, Suite 2300, Norfolk, Virginia, 23510.  Harbor Group Management Co, LLC is a property management company handling property management, property leasing and construction management.  HGMC manages approximately 54,000 rental units in 20 states.  HGMC manages Northgate Crossing Apartments in Wheeling, Illinois.  HGMC utilizes the umbrella website at www.hgliving.com, which directs the user to a particular searched property.  The website www.hgliving.com can also be directly accessed by the user, who can search "FIND YOUR NEW HOME" for apartment complexes managed by HGMC by community, city, state or zip code.

4

15.     Defendant Harbor Group International, LLC ("HGI") is a global real estate investment and management firm headquartered along with its HGMC division at 999 Waterside Drive, Suite 2300, Norfolk, Virginia, 23510, that controls $20 billion in real estate investment properties.  HGI invests in and manages 58,000 multifamily units.  HGI firm offers tiers of investors opportunities to invest in its real estate holdings, including multifamily properties. HGI utilizes its division HGMC for leasing and management of many of its multifamily apartment complexes.

16.     Defendant Azure Partners, LLC ("Azure") is a real estate investment firm focused on the acquisition and management of real estate assets within high-growth markets, headquartered at 900 3rd Avenue, New York, NY, 10022.  Azure Partners undertakes certain joint ventures with HGI, including in the Northern Chicago Metropolitan Area suburbs, and utilizes HGMC management services at certain of its properties.  Azure controls ownership of Northgate Crossing apartments in Wheeling, Illinois and utilizes HGMC and PERQ at Northgate Crossing. The Village of Wheeling Illinois transacts business concerning Northgate Crossing directly with Azure Partners, LLC as owner (e.g. utility payments).

17.     Defendants HGI and Azure are licensed to do business in each state where the HGMC apartment complexes they own and/or control that were investigated are located, and/or HGI and Azure control locally registered Limited Liability Companies as the local ownership mechanism of the apartment complexes investigated by Open Communities.  (Appendix A)

18.     Defendant Silver Northgate LLC, is an Illinois Limited Liability Company affiliated with and controlled by Defendant Azure, that is an owner of record of Northgate Crossing apartments in Wheeling, Illinois.

5

19.     Defendant Azure Northgate LLC, is also an Illinois Limited Liability Company affiliated with and controlled by Defendant Azure, that is an owner of record of Northgate Crossing apartments in Wheeling, Illinois.

20.     PERQ HOLDINGS, LLC is headquartered at 5868 E. 71st. Street, Suite E-672, Indianapolis, Indiana, 46220, the physical address associated with Perq.com automated multifamily property management services.  Related entities PERQ Software, LLC and PERQ Marketing, LLC share the same officers as PERQ HOLDINGS, LLC, and list their principal office location as 7225 Georgetown Road, Indianapolis, IN, 46268.  The three PERQ entities are collectively referred to herein as "PERQ."

21.      PERQ is a multifamily marketing automation platform that automates the rental process with the stated goal of securing more leases with less work and cost.  PERQ states its systems are powered by artificial intelligence, and that PERQ combines digital renter tools, "conversational AI," and personalized automated "nurture and follow-up" to help multifamily property management companies capture more qualified leads.  According to PERQ's website: "PERQ is multifamily' s only marketing automation solution for automating the renter's journey. Our technology leverages AI and blends website shopping tools, cross-channel conversational AI, personalized long-term nurturing of rental prospects and automated tour scheduling to get multifamily PMCs more leases for less work and cost." www.perq.com.  Harbor Group Management Co, LLC, and Azure Partners, LLC utilize PERQ automated systems at Northgate Crossing Apartments in Wheeling, Illinois and at other properties identified in this Complaint and Appendix A.

22.     Appendix A is an index of over 100 multifamily apartment complexes in 17 states investigated by Open Communities, managed by HGMC, and utilizing PERQ to implement

blanket denials of rental applicants with housing assistance vouchers seeking rental housing via the Internet.

## FACTUAL ALLEGATIONS

23.    In February of 2023, Plaintiff Richardson was seeking to rent an apartment in Chicago's Northern and Northwest suburbs, close to her source of employment.

24.    Like most current apartment-seekers, Ms. Richardson relied on Internet-based research to identify and apply for potential apartments.

25.    Through her Internet-based apartment search focusing only on rental apartments within her budget, Ms. Richardson identified Northgate Crossing apartments in Wheeling, Illinois in using the Trulia web site, which automatically redirected her to Northgate Crossings' website identifying HGMC as the apartment complex property management company.

26.    On the HGMC website for Northgate Crossing in Wheeling, Ms. Richardson was impressed by the Wheeling location and amenities at Northgate (even though Northgate Crossing is mostly surrounded by railroad tracks and an industrial park).

27.    Ms. Richardson participates in the HUD Housing Choice Voucher ("HCV") program (also known as Section 8), concluded that an apartment at Northgate Crossing was within her budget and related considerations, and initiated her routine rental application process by contacting Northgate Crossing directly via the Internet.

28.    On the HGMC Northgate Crossing website, Ms. Richardson entered her information and email address on or about February 25, 2023.  Ms. Richardson received a conversational email from the "Northgate Bot" on February 25 with the subject line "How're Things Coming Along Liz" prompting her to follow up via text or email:



29.     Ms. Richardson responded by asking Northgate (a "Bot" that was using PERQ) whether the company worked with people with housing choice vouchers, and moments later received an emailed response from the Northgate Bot "Virtual Leasing Assistant" utilizing a PERQ email address, informing her that Northgate Crossing did not accept housing choice vouchers:

8

**From:** "Customer Service" <customer.service.qejl28il0@perqemail.com>
**To:** "lizrichardson63@yahoo.com" <lizrichardson63@yahoo.com>
**Sent:** Mon, Feb 27, 2023 at 9:42 AM
**Subject:** Re: How're things coming along, Liz?
Hey Liz,

Here's our information regarding Section 8 housing.

We are currently not accepting housing choice vouchers.

Ready to learn more? Check out our available dates and times here.

Sincerely,

Northgate Bot
Virtual Leasing Assistant

30.     Ms. Richardson contacted Open Communities on February 27, 2023 concerning this housing denial by Northgate and Open Communities began its investigation into Defendants' practices.

31.     On April 12, 2023, Open Communities Investigator A contacted Northgate Crossing apartments through Harbor Group Management Co, LLC as a potential renter, inquiring whether housing vouchers/Section 8 were accepted.  Open Communities Investigator A received a written response generated from HGMC/PERQ systems communicating: "Here's our information regarding Section 8 housing.  We are currently not accepting housing choice vouchers."

32.     Through August 24, 2023, Open Communities engaged in a systemic investigation of HGMC-managed properties on Appendix A, all of which utilized PERQ automated AI leasing assistance services.

9

33.    HGMC-run web sites for each of the investigated properties on Appendix A utilize a conversational AI mechanism stating "Powered by Perq."

34.    It became apparent to Open Communities investigators that the "chatbot" on the HGMC/PERQ websites was trained to respond to keywords like "section 8 voucher" with an auto-response stating "We are not currently accepting housing choice vouchers."

35.    Defendants intentionally employed these systems and communications with Ms. Richardson and other applicants whose source of income included housing choice voucher payments.  These applicants were thus told they were outright disqualified denied consideration and assessment of their qualifications, and never given a chance.

36.    An example of the substantially identical inquiries and rejection communications by PERQ-generated email from HGMC entities listed on Appendix A, pertaining to Array Vista Canyon apartments in Santa Clarita, California, is as follows:

[The remainder of this page is intentionally left blank]

8/4/23, 5:07 PM                                          Gmail - Following up on your Email inquiry

 Gmail                                    **Bryan Abernathy <abernathybryan14@gmail.com>**

## Following up on your Email inquiry
1 message

**Customer Service** <customer.service.vrjaslyy0@perqemail.com>                  Fri, Aug 4, 2023 at 11:41 AM
Reply-To: Customer Service <customer.service.vrjaslyy0@perqemail.com>
To: abernathybryan14@gmail.com

Hey B,

I saw you were looking for more information on Affordable Housing and Availability.

**Affordable Housing:**

Here's our information regarding Section 8 housing.

We are currently not accepting housing choice vouchers.

**Availability:**

Here are the options we have available:

S1

- Studio / 1 Bath

A5

- 1 Bed / 1 Bath

B1

- 2 Bed / 2 Bath

**Price and availability are subject to change.

Open the door to something special with a spacious, open-style apartment at Array Vista Canyon near Canyon Country Park. Check out our floor plans!

Ready to learn more? Check out our available dates and times here.

Sincerely,

Array Vista Bot
Virtual Leasing Assistant

Dial/Text: (661) 550-2646
17350 Humphreys Parkway
Santa Clarita, CA 91387
Chat 24/7 - Click Here

37.     An example of these substantially identical inquiry and rejection communications via the HGMC-PERQ chatbot, "Powered by PERQ," used by HGMC entities listed on Appendix A, at Cinnamon Run apartments in Maryland is as follows:



38.     PERQ knowingly and actively participated in the discriminatory conduct alleged herein, along with HGMC and the remaining Defendants.

39.     Open Communities' investigation also confirmed that PERQ actively participates with its clients, including Defendants, in customizing its automated, AI-supported conversational leasing assistant.  Open Communities engaged in email communications with PERQ to inquire about the extent to which PERQ engineers are involved in the process of configuring elements like auto-responses to keywords in response to client customization requests. In one exchange, Open Communities (via an investigatory email address) asked whether "we would be able to mold things once we are using PERQ or if everything is done in a managed package sort of way" and explicitly referenced the chatbot's auto replies. PERQ replied, "Our solution has some fairly

expansive configuration *that would be handled by the PERQ team based on individual customer needs*."

40.     Following investigation of the HGMC/PERQ-managed apartment complexes listed on Appendix A, on August 24, 2023, Open Communities engaged in confirmatory investigation of Northgate Crossing's blanket no-housing-choice-voucher policy communicated to on-line apartment seekers by HGMC using PERQ AI, by initially using the Trulia portal, and was automatically redirected into the HGMC-run Northgate Crossing website, which generated the usual local and nationwide policy statement communication that housing choice vouchers were not accepted.

41.     Between February 25, 2023 and August 24, 2023, in all 100+ cases (See Appendix A) where HGMC utilized PERQ's automated AI Leasing Assistant, Open Communities' Internet-based inquiries about housing choice vouchers or Section 8 generated a response similar or identical to the statement issued to Richardson by HGMC at Northgate Crossing, informing the applicant that housing choice vouchers or Section 8 were blanketly not accepted.

42.     Subsequent to completion of its investigation, Open Communities conducted follow-up via the HGMC/PERQ artificial assistant on September 11, 2023 of HGMC at Alesio Urban Center in Irving Texas, which had written to an Open Communities investigative email address on April 23, 2023 that housing choice vouchers were not accepted. Open Communities received a recently crafted and radically different response on September 11, 2023 that "we provide housing opportunities to all prospective residents who meet our resident screening criteria regardless of their source of funds." Open Communities confirmed on September 11,

2023 this different response was now programmed into HGMC/PERQ-managed property at Oaks of Vernon Hills, Illinois.

43.     On information and belief, Defendants detected Open Communities' investigatory inquiries that confirmed the nationwide pattern of discriminatory conduct by HGMC and PERQ since 2022.

44.     However, since February 27, 2023, Ms. Richardson has received no subsequent communications from HGMC, PERQ or any defendant, of any kind, including no "nurturing," "conversational," or other follow-up correspondence on Defendants' behalf correcting or retracting the February 27, 2023 rejection of housing choice vouchers or inviting her to reapply.

45.     Similarly, Defendants have not subsequently communicated through any means to retract or correct the rejections from apartment complexes listed on Appendix A that were previously conveyed to Open Communities investigators over 100 times.

46.     As a result of Defendants' discriminatory unlawful conduct, Ms. Richardson was forced to live with relatives for an extended period of time, causing difficulties in finding suitable housing, and greatly increasing inconvenience relating to employment opportunities and daily life.     Ms. Richardson suffered out-of-pocket pecuniary damages, incurred indebtedness, and incurred myriad additional expenses as a result of Defendants' conduct.   Moreover, Ms. Richardson felt discriminatorily stigmatized, devalued, discouraged, deterred and rejected from seeking housing, based on her status in protected classes.   As a result of Defendants' conduct, Ms. Richardson experienced negative health consequences.

47.     Ms. Richardson required several extensions from the public housing authority due to Defendants' conduct and faced steep challenges and exacerbated anxiety and health

14

consequences as a result of Defendants' conduct and difficulties finding non-discriminatory

housing.

48.     Defendants' blanket no-voucher policy statements directed toward renters with

housing assistance vouchers who search and apply for housing using the Internet has a disparate

impact on African American renters in the Chicago suburbs of Illinois and all locations listed in

Appendix A where Defendants' discriminatory policy was applied.

49.     Open Communities Investigators suspected there were likely to be statistical

differences in the race of housing choice voucher holders in the areas where Defendants were

operating multifamily rental properties.  In other words, that African American voucher holders

were not only being targeted by intentional discrimination and racial stereotypes, but also likely

being disparately impacted by the practices being employed by Defendants, given their

overrepresentation in the HCV program.

50.     Therefore, Open Communities conducted demographic research in the states and

cities where Harbor Group Management utilized PERQ software in the discriminatory fashion

alleged herein, and confirmed disparities between the percentage of African American residents

in the local housing choice voucher programs compared to their share of the general population –

the difference in African American representation was often many multiples higher in the

voucher program.

51.     This research was conducted by Open Communities using PolicyMap. The

specific data sources utilized to acquire the data were the decennial census, American

Community Survey, as well as HUD's A Picture of Subsidized Households data, which is

available from 2009-2021 at present.

52.     In Illinois, the population demographics, compared to Housing Choice Voucher

holder demographics confirm very substantial racial disparities, as follows:

> State population: 12,812,508
> 13.86% African American, population 1,775,612
> 58.32% White, population 7,472,751
> 7.63% White Hispanic, population 978,131
> 5.83% Asian, population 747,280
> 5.94% Hispanic, population 761,418
> 8.94% Two + races,  population 1,144,984
> 78% of households with HCVs are African American and non-Hispanic
> 15% of households with HCVs are White and non-Hispanic
> 1% of households with HCVs are Asian
> 7% of households with HCVs are Hispanic

53.     In Cook County, Illinois, the location of Northgate Crossing, the population

demographics, compared to Housing Choice Voucher holder demographics, are as follows:

> State population: 5,275,541
> 22.47% African American, population 1,185,601
> 40.47% White, population 2,135,243
> 10.41% White Hispanic, population 547,909
> 7.75% Asian, population 408,691
> 9.61% Hispanic, population 505,783
> 10.36% Two + races, population 546,552
> 85% of households with HCVs are African American and Non-Hispanic
> 6% of households with HCVs are White and Non-Hispanic
> 1% of households with HCVs are Asian
> 8% of households with HCVs are Hispanic

54.     There is no substantial, legitimate, nondiscriminatory interest of Defendants to

justify their blanket no-voucher policy, including as applied to Plaintiff Richardson.

55.     Racially derogatory stereotypes persist and are applied to African American

participants in Housing Choice Voucher programs, as evidenced by replete examples of landlords

refusing vouchers, "Not In My Back Yard" (NIMBY) opposition to housing for lower income

residents in communities throughout the United States, and the rise of movements to install state-

wide Source Of Income protections across the United States.  Derogatory attitudes towards

16

disproportionately African American lower income potential residents have been studied and are well-documented, including in U.S. suburban metropolitan areas.[1]

56.     Open Communities was an endorser of the Illinois Source Of Income protection statute, effective January 1, 2023.   Open Communities' current Assistant Director, Fair Housing Department, worked directly on the campaign to develop the law, educate legislators and the public, and eventually see through its passage.   As of January 1, 2023, 21 other states had previously passed Source of Income protections, including in 8 states where HGMC managed multifamily housing complexes.

57.     Source of income discrimination "disproportionately affects renters of color, women and persons with disabilities.  As a result, source of income (SOI) discrimination contributes to the perpetuation of racially segregated communities and neighborhoods with concentrated poverty." Fasanelli, Tegler, *Your Money's No Good Here: Combatting Source of Income Discrimination in Housing*, American Bar Association, November 30, 2019, Human Rights Section.

58.     The addition of Source of Income as a protected class under the Illinois Human Rights Act, including prohibiting landlord advertisements refusing to accept housing choice vouchers or Section 8 subsidies, was widely published, including in the real estate field.  *See, e.g. Source of Income Now a Protected Class in Illinois,* February 2, 2023, www.Chicagorealtor.com.

---

[1] "*A Mask for Racial Discrimination" How Housing Voucher Programs Can Hurt the Low-Income Families They are Designed to Help,* Vesoulis, February 20, 2020, Time Magazine; *Suburbanization and Segregation in the United States,* Massey, Tannen, Ethnic and Racial Studies, Vo. 41, 2018 – Issue 9, April 26, 2017, available at National Institute of Health, National Library of Medicine; *Rental Deserts Perpetuate Socioeconomic and Racial Segregation*, Airgood-Obrycki, Joint Center for Housing Studies of Harvard University, August 4, 2022; *Homeownership, Racial Segregation, and Policy Solutions to Racial Wealth Equity*, Ray, Perry, Harshbarger, Elizondo and Gibbons, Brookings Institute, September 1, 2021.

59.     The National Fair Housing Alliance's 2023 Fair Housing Trends Report confirms "source of income discrimination disproportionately affects renters based on race, disability and gender" and may be used as a camouflage for race discrimination.

https://nationalfairhousing.org/resource/2023-fair-housing-trends-report/ The U.S. Department of Housing and Urban Development (HUD) Office of Fair Housing and Equal Opportunity confirmed in 2021 that policies refusing to rent or lend based on source of income may be "facially neutral," but may have the effect of discriminating based on race, because more Black citizens are HCV holders.   (NFHA 2023 Report, n. 9, *citing* FHEO 8-2-2021)

60.     Further, Artificial Intelligence has the potential to perpetuate, amplify, and accelerate historical patterns of discrimination.  https://nationalfairhousing.org/re-draft-nist-special-publication-1270-a-proposal-for-identifying-and-managing-bias-within-artificial-intelligence/

### DAMAGES

61.     Plaintiff Richardson has suffered loss of her civil rights, monetary losses, lost housing opportunity, emotional injury, injuries to her health, humiliation, and embarrassment as a result of Defendants' discriminatory policies and conduct.

62.     Plaintiff Open Communities has been directly and substantially injured as a result of the foregoing discriminatory acts of Defendants because it was required to investigate Defendants' conduct, it was required to investigate Ms. Richardson's complaint of housing discrimination, and because its programs and services were directly linked to and undermined by Defendants' conduct.

63.     Plaintiff Open Communities has further been directly and substantially injured by Defendants' conduct, in that:

A. Open Communities has been frustrated in its mission to eradicate discrimination in housing and in carrying out the programs and services it provides, including providing housing counseling services, providing housing educational services, receiving and investigating complaints of housing discrimination, furthering integrated housing, advocating for the housing rights of communities of color, advocating against Source Of Income discrimination, educating the public about fair housing rights and requirements, educating and working with industry groups on fair housing compliance, providing assistance to individuals and families looking for housing or affected by discriminatory housing practices, and eliminating discriminatory housing practices;

B. Open Communities' limited resources have been diverted from providing these services to efforts necessary to investigate, address, and counteract Defendants' discriminatory conduct.

64. Defendants' conduct is particularly egregious in that it was intentionally designed to reject and preempt a full application process for potential renters with housing choice vouchers who use the most prevalent avenue of advertisement of and applications for Defendants' multifamily rental housing.

65. Defendants' conduct is particularly egregious in that it was intentionally designed to reject and preempt potential renters with Housing Choice Vouchers from formally entering the documented applicant pool using pre-programmed Artificial Intelligence by rejecting and deterring applicants at the outset, inhibiting properly tracking, of rental applications, allowing secretion of recordkeeping concerning whether denial of housing was based on race-neutral factors and/or non-discriminatory reasons, and diffusing evidence of Fair Housing Act and other legal violations relating to discriminatorily rejected applications in protected classes.

66. Defendants' conduct is particularly egregious in that it repeated pre-programmed facially discriminatory statements and information over 100 times to Open Communities Investigators, in addition to Plaintiff Richardson.

19

67. Defendants' conduct is particularly egregious in that it intentionally uses Artificial Intelligence entities posing as Leasing Assistants to auto-reject applicants based on pre-programmed impermissible criteria, under the misleading guise of "conversation" and "nurture," rather than engaging applicants with housing choice vouchers with actual human contacts who could be properly trained and monitored as to compliance with applicable civil rights laws, who could be called as witnesses and who could potentially discern nuances and circumstances requiring tailored non-discriminatory communications and/or negotiations with applicants whose rental applications raised issues concerning income and other eligibility factors for open units.

68. Defendants' conduct is also particularly egregious since statewide Source Of Income discrimination protections existed in several investigated states where Defendants employed their discriminatory blanket policy.

69. Plaintiffs demand trial by jury.

## COUNT I – FAIR HOUSING ACT VIOLATION §3604

70. Plaintiffs reallege and incorporate the allegations contained in paragraphs 1-69 as if fully set forth herein.

71. In violation of 42 U.S.C. §3604(a) and (b), Defendants' policies and discriminatory conduct have made a dwelling unavailable to Plaintiff Richardson and discriminated against her on the basis of race in the terms, conditions and privileges of rental, or in the provision of services or facilities, including but not limited to the following:

    A. Failing and refusing to rent to Ms. Richardson because a portion of her monthly rent would be satisfied using a Housing Choice Voucher based on a policy implementing racially discriminatory stereotypes;

    B. Enforcing a blanket rental ban on potential renters with housing choice vouchers (Section 8); and

    C. Failing and refusing to invite Ms. Richardson to apply for a rental unit.

## COUNT II – §3604 (c) and 24 C.F.R. §100.75

72.     Plaintiffs reallege and incorporate the allegations contained in paragraphs 1- 69 as if fully set forth herein.

73.     In violation of 42 U.S.C. §3604(c), Defendants' policy and discriminatory conduct constitute impermissible discriminatory statements made with respect to the sale or rental of a dwelling.

## COUNT III – 735 ILCS §5/1-103(0-5)

74.     Plaintiffs reallege and incorporate the allegations contained in paragraphs 1-73 as if fully set forth herein.

75.     In violation of the Illinois Human Rights Act, 735 ILCS §5/1-103(0-5), Defendants' policy and discriminatory conduct constitute impermissible Source Of Income discrimination.

76.     Defendants' conduct that violates Illinois law as to source of income discrimination is part of the same case or controversy as alleged herein under the Fair Housing Act, over which claims the Court has jurisdiction under Article III of the United States Constitution.  28 U.S.C. §1367.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully pray that the Court grant them the following relief:

> A.     Enter a declaratory judgment that Defendants' unlawful discriminatory conduct and statements have injured Plaintiffs in violation of the Fair Housing Act of 1968, as amended, 42 U.S.C. §3604 (a)-(c);

B.    Enter a declaratory judgment that Defendants' unlawful discriminatory conduct and statements have injured Plaintiffs in violation of the Illinois Human Rights Act, 735 ILCS §5/1-103(0-5);

C.    Award such damages under the Fair Housing Act of 1968, as amended, as will fully compensate Plaintiff Richardson for her injuries, monetary and non-monetary, incurred as a result of Defendants' discriminatory conduct as alleged herein;

D.    Award such damages under the Illinois Human Rights Act, as amended, as will fully compensate Plaintiff Richardson for her injuries, monetary and non-monetary, incurred as a result of Defendants' discriminatory conduct as alleged herein

E.    Award Plaintiff Open Communities pecuniary and non-pecuniary damages under the Fair Housing Act of 1968, as amended, and Illinois Human Rights Act resulting from frustration of mission and diversion of resources and any other relief permissible under law;

F.    Award punitive damages as are proper under law to punish Defendants for their malicious and recklessly indifferent conduct alleged herein by Plaintiffs and to effectively deter similar conduct in the future, pursuant to 42 U.S.C. §3613(c)(1) and the Illinois Human Rights Act;

G.    Award Plaintiffs their costs and attorneys' fees incurred herein, pursuant to 42 U.S.C. §3613(c)(2) and the Illinois Human Rights Act;

H.    Award Plaintiffs all other applicable relief available to them under the Fair Housing Act and Illinois Human Rights Act, including but not limited to

injunctive and equitable relief as appropriate to remedy past, ongoing and

future violations of the Fair Housing Act and Illinois Human Rights Act;

and

I.      Grant such other relief as the Court deems appropriate.


Respectfully submitted,

_____*/s/ Jennifer K. Soule*_____
One of Plaintiffs' Attorneys


Jennifer K. Soule
Kelly K. Lambert
James G. Bradtke
*Soule, Bradtke & Lambert*
402 Campbell Street, Suite 100
Geneva, IL 60134
(630) 333-9144

Dated: September 25, 2023